IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

REBBECAA S. CHAVEZ,

        Plaintiff,

vs.                                                  Civ. No. 14-0639 MCA/GBW

DIVERSE FINANCIAL ENTERPRISES INC., et al.,

        Defendants.

**ORDER**

        This case is brought pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*, and New Mexico common law. The Court has jurisdiction over Plaintiff's federal claim pursuant to 15 U.S.C. § 1692k(d); the Court has supplemental jurisdiction over Plaintiff's state-law tort claim pursuant to 28 U.S.C. § 1367. Based on the allegations of the Complaint, this Court's exercise of specific personal jurisdiction over Defendants is consistent with the requirements of Due Process. *See Russey v. Rankin*, 837 F. Supp. 1103 (D. N.M. 1993).

        The record reflects that Defendants Diverse Financial Enterprises Inc. and Diverse Financial Group ("Defendants") were served with process on July 29, 2014 and that they thereafter failed to answer or otherwise respond. On October 15, 2014, Plaintiff filed a motion for a default judgment against Defendants. On October 22, 2014, the Clerk of Court entered a default against Defendants. On April 9, 2015, the Court conducted an evidentiary hearing on damages. Defendants did not appear. The Court received

1

evidence, including the testimony of Plaintiff, Rebecca S. Chavez, and Plaintiff's daughter, Theresa Chavez.

By failing to appear and plead, Defendants have admitted the well-pleaded allegations of fact set out in Plaintiff's complaint.[1]  Based on a careful review of the Complaint, the Court concludes that Plaintiff has alleged sufficient facts to establish that each Defendant is a "debt collector" as defined by § 1692a(6); that Theresa Chavez is a "consumer" as defined by § 162a(3); that Defendants violated § 1692c(b) by contacting Plaintiff about a debt purportedly owed by Theresa for a purpose other than obtaining location information;[2]  that Defendants violated § 1692d and 1692e(2)(A) by continuing to call Plaintiff subsequent to the October 8, 2013 payment which, as Defendants acknowledged in writing, discharged the underlying debt owed to FastBucks; that Defendants violated § 1692e(1) by advising Plaintiff that they were "state processor with the state"; that Defendants violated 1692e(4) and (5) by calling Plaintiff and threatening to have Theresa's car repossessed and Theresa arrested and subjected to a $50,000 bond, knowing that they had no legal right and no intention to take these actions; that Defendants violated 1692e by creating a false sense of urgency and by using inconsistent "desk names."[3]  The Court further concludes that Plaintiff has alleged facts establishing

---

[1] *United States v. Craighead*, 176 Fed. Appx. 922, 924-25 (10th Cir. 2006); *see also Personal Indus. Loan Corp. v. Forgay*,  240 F.2d 18, 20 (10th Cir. 1957) ("By failing to appear and permitting a default judgment to be entered, [appellee]  admitted only facts well pleaded.").
[2] *Thomas v. Consumer Adjustment Co.*,  579 F. Supp. 2d 1290, 1297-98 (E.D. Mo. 2008) (holding that third party has standing to assert claim under § 1692c(b)).
[3] *Thomas*, 579 F. Supp. 2d at 1294

that Defendants employed unfair and unconscionable means in attempting to collect a debt in violation of § 1692f.[4]  The Court rejects Plaintiff's claim that Defendants violated § 1692e(2)(A) with respect to Defendants' assertion that the amount of the underlying debt was $1,519.64.  The Complaint alleges that Theresa Chavez borrowed $400 and that she paid $75 before defaulting.  Theresa testified that the loan bore interest of 250% per annum.  At that rate, the $325 balance owed would have increased rapidly and dramatically.  Plaintiff has not established by a preponderance of the evidence that the February 2012 payment of $823.54 paid off the entire loan balance or that $1,519.64 was a misstatement of the balance owed by Theresa in October 2013 under the terms of her loan with FastBucks.  However, the Court concludes that Defendants' post-October 8, 2013 efforts to collect nonexistent debts did violate § 1692e(2)(A).

The Court, having considered that factors set out in 1692k(b)(1), finds that Plaintiff is entitled to actual damages of $15,000 for emotional distress and $2,019.64 to restore the amount Defendants extorted from Plaintiff, and to additional statutory damages in the amount of $1,000.  The Court finds that the tactics utilized by Defendants to obtain payment of Theresa's debt from Plaintiff to have been outrageous and despicable.  Based on Plaintiff's testimony at the evidentiary hearing on damages, the Court finds that Plaintiff suffered severe emotional distress as the result of Defendants' outrageous tactics.

Section 1692k(a)(3) provides for an award of costs together with reasonable attorney's fees to a party bringing a successful FDCPA action.  The United States

---

[4]*Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1177-78 (9th Cir. 2006) (recognizing that same conduct may violate multiple provisions of the FDCPA).

Supreme Court has reaffirmed a preference for the lodestar method of setting attorney's fees. *Perdue v. Kenny, A.*, 559 U.S. 542 (2010). As our Court of Appeals subsequently observed, "[i]n *Perdue*, the Court appears to significantly marginalize the twelve-factor *Johnson* analysis." *Anchondo v. Anderson, Crenshaw & Associates, L.L.C.*, 616 F.3d 1098, 1103 (10th Cir. 2010). The "*Johnson* analysis" refers to a twelve factor fee analysis derived from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *Anchondo*, 616 F.3d at 1103 n.3. "The *Perdue* Court clearly embraces the lodestar approach as the preferable alternative to the *Johnson* analysis . . . ." *Id.* at 1103. The lodestar amount "produces a presumptively reasonable fee that may in rare circumstances be adjusted to account for the presence of special circumstances." *Id.* at 1102. Plaintiff's counsel has provided the Court with a sworn statement coupled with itemized billing records that permit the Court to engage in the calculation of a lodestar amount: *i.e.*, "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 1102 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quotation marks omitted).

The Court finds that the hours billed were reasonably expended. Based on its own knowledge of prevailing rates, the Court further finds that the hourly rates requested by Plaintiff's counsel are in line with prevailing rates in the Albuquerque legal community. The gross lodestar amount therefore is $4,397.50. However, two entries, for August 25, 2014 and March 27, 2015 in the amounts of $25.00 and $49.50, were concerned solely with Defendant Snow, against whom default has not been entered. The Court will deduct these amounts from the gross lodestar amount. Another entry, for April 3, 2015, in the

4

amount of $23.00, apparently was incurred by a paralegal in preparing correspondence with all three Defendants.  The Court will reduce this amount by $7.67, to reflect time presumably incurred in preparing correspondence with Defendant Snow.  The Court will reduce the gross lodestar amount by $82.17, representing hours expended solely with respect to Defendant Snow, leaving a net lodestar amount of $4,315.33.  The Court will also award gross receipts tax (calculated at 7%) on the fee award in the amount of $302.07.    Having considered the principles discussed in *Farrar v. Hobby*, 506 U.S. 103 (1992), the Court concludes that no further adjustment of the lodestar amount is appropriate under the facts of this case.

Plaintiff also has requested costs (expenses and advances) in the amount of $1,091.40.  The Court notes that one item, "Filing fee for Motion to Dismiss as to Gresham only," in the amount of $6.00 appears to have included erroneously.   Three other entries dated October 20, 2014, October 23, 2014 and April 3, 2015 appear to concern mailings to all three Defendants.  These three entries total $66.42, which the Court will reduce by one third ($22.14) to reflect costs attributable to Defendant Snow.  These reductions leave awardable costs of $1,063.26

To summarize, pursuant to the FDCPA, the Court awards Plaintiff $17,019.64 in actual damages; $1,000 in statutory damages; $4,617.40 in attorney's fees; and $1,063.26 in costs.

In *Montgomery Ward v. Larragoite*, 81 N.M. 383 (1970), the New Mexico Supreme Court recognized a cause of action for tortious debt collection.[5] The Court concludes that Plaintiff's Complaint alleges a plausible claim for tortious debt collection. Based on Plaintiff's testimony, the Court finds that the outrageous extortionate conduct of Defendants on October 8, 2013, by itself justifies an award of damages for tortious debt collection. This misconduct was compounded by subsequent demands for payment of nonexistent debts. The Court finds that Plaintiff is entitled to damages of $15,000 for emotional distress and $2,019.64 to restore the amount Defendants extorted from Plaintiff. The Court finds that the conduct of Defendants' agents on October 8, 2013 was willful, wanton, malicious, oppressive, fraudulent and in bad faith. However, the Court is unable to award punitive damages against Defendants due to the absence of allegations that would support one of the three theories by which an employer may be held liable for punitive damages based on the conduct of employees. *Chavarria v. Fleetwood Retail Corp.*, 140 N.M. 478, 486 (2006).

To summarize, pursuant to New Mexico common law, the Court awards Plaintiff 17,019.64 in actual damages. Pursuant to Fed. R. Civ. P. 54(d), the Court awards Plaintiff $1,063.26 in costs.

These awards under federal and state law are in the alternative. It is not the Court's intention to permit double recovery. A judgment consistent with this Order will issue forthwith.

---

[5] *Larragoite* was decided in 1970, prior to New Mexico's recognition of the tort of intentional infliction of emotional distress. *See Mantz v. Follingstad*, 84 N.M. 473, 470 (Ct. App. 1972) (observing that "intentional infliction of mental suffering" is "a new theory in New Mexico"). It appears that the causes of action for tortious debt collection and intentional infliction of emotional distress may overlap substantially.

**So Ordered this 10th day of June, 2015.**

_____
M. CHRISTINA ARMIJO
Chief United States District Judge